IN MATTER OF VILLAGE OF GRANDVIEW, APPELLANT, v. HENRY F. McELROY ET AL., RESPONDENTS.

Kansas City Court of Appeals. June 27, 1928.

*A. N. Gossett* and *T. L. Robinson* for appellant.

*Fred A. Boxley,* county counselor for respondents.

FRANK, C.—This is an appeal from an order and judgment of the circuit court of Jackson county sustaining respondents' motion to quash a writ of *certiorari* theretofore issued on the application of appellant.

Appellant's verified petition for *certiorari* alleges:

"Your petitioner, the village (or town) of Grandview (of Jackson county, Missouri), states and shows that it is now, and at all times herein stated and long prior thereto was, a municipal corporation, incorporated and existing as a town or village under and in accordance with the statutes of Missouri, being a town or village of less than five hundred inhabitants;

"That the respondents, Henry F. McElroy, as presiding judge, and Elihu W. Hayes and Harry S. Truman as associate judges, are and at all times herein stated were the judges of and composing the county court of Jackson county, Missouri, and respondent, Peter J. Kelly, is and so was the county clerk of Jackson county, Missouri, and, as such, the clerk of said county court;

"Your petitioner further alleges, states and shows that said county judges, composing the said county court, and with their clerk aforesaid have assumed to entertain jurisdiction and have proceeded to consider and enter a purported judgment or order in and an alleged

proceeding in said county court upon a petition purporting to be a 'Petition of Taxpayers of the Village of Grandview to Diminish the limits of said Village of Grandview,' and which said petition was filed in said county court on October 6, 1923, and purports to be signed by or to have attached thereto a large number of names of persons in said petition alleged to be a majority of the taxpayers of said village of Grandview, and praying that an order and judgment be made diminishing the territorial limits of said village by excluding therefrom various and sundry tracts of lands, particularly described in the purported order of said county court, purporting to have been made on October 16, 1923, as hereinafter set out, to which part of this petition and description reference is here made, which said tract: of land are located within the territorial limits of said village and in said petition and application, so filed in the said county court, alleged each to contain more than five acres of land, and to be then used only for agricultural purposes;

"Your petitioner shows and states that in truth and in fact the said persons whose names are in fact signed to said petition by themselves were not and did not at the time of filing the petition, or at any time, constitute a majority of the taxpayers of said village, and that a large number of names so signed to said petition were in truth and in fact written thereto by other person or persons whose names are unknown to your petitioner and without authority from the real persons of such names, and the persons whose genuine signatures are signed to said petition were not and did not compose a majority of the taxpayers of said village or town of Grandview.

"Your petitioner further states and shows that several of said tracts of land described as separate tracts were not at said time of filing said petition, nor have they since been at any time, or either of them, tracts of land containing more than five acres, nor were they used only for agricultural purposes, although included within the corporate limits of said village;

"Your petitioner further shows that said petition, when filed, was accompanied with a paper writing purporting to be an application and to be signed by the owners of the hereinafter-described tracts of land and further purporting to be signed by the owners of separate lots in the tract of land described in said petition as 'all of Grandview Heights Resurvey, a subdivision of land in said county,' said subdivision consisting of thirty-three or more such lots, many of which were and are not tracts of five acres of land and were and are not used only for agricultural purposes either at the time of filing said petition or at any time since such filing;

"Your petitioner further shows that some of the names signed to said application are not the names of persons who owned the respec-

tive lots in Grandview, of which, in said application, they respectively purported to be the owners;

"Your petitioner further shows that no notice was ever published or posted or given in any manner whatsoever to your petitioner, or to its board of trustees or any of them nor to any of its officers or officials, of the filing of said petition and application or either of the same, nor of any intention to present the same to said county court, nor was any notice whatsoever so given of the making of the purported order or judgment thereon entered, as hereinafter stated, and your petitioner did not know or learn of the making of said order or judgment until after the termination and final adjournment of the October term, 1923, of said county court;

"Your petitioner further states and shows that nevertheless the said respondents, judges, as said county court assumed to entertain jurisdiction in said proceeding and to act and enter a certain judgment or order thereon, and the respondent clerk of said court proceeded to enter in the records of said court a certain order thereon and in said proceeding, all to-wit on October 16, 1923, at the October term, 1923, of said court, substantially in words and figures as herein set out, viz.: In the matter of the application of M. S. Wallace and others to diminish the limits of the village of Grandview in Jackson county, Missouri.

"The application of M. S. Wallace and other landowners to diminish the limits of the village of Grandview in Jackson county, Missouri, by excluding therefrom certain tracts of land as provided by section 8593 of the Revised Statutes of Missouri, 1919, coming on for hearing before this court and the court finding that said application is accompanied by a petition asking such changes as applied for in said application signed by a majority of the assessed tax-paying citizens of said village and that each of said tracts of land in said application set out contains five acres or more and that the same have been used and are used only for agricultural purposes and the court having been fully advised and informed in the premises finds, orders, adjudges and decrees that said tracts of land in said application set out be and each and all of the same are excluded from the corporate limits of said village of Grandview and the limits of said village of Grandview, Missouri, are diminished accordingly."

The petition then describes each separate tract of land that was excluded from said village and gives the name of the owner of each separate tract. After describing the land as above stated the petition then alleges:

"Your petitioner further states and shows that the lands described in said petition and by said entry purported to be excluded from the municipal limits of your petitioner comprise a large part, to-wit, one-fourth of the entire municipal territory or area of your petitioner.

"Your petitioner further states and shows that said assumption of jurisdiction by said county court and the judges and clerk thereof, composing the same, is without warrant of law because said court for the reasons aforesaid, viz.: that said petition was not in truth and in fact signed by a majority of the taxpayers of said village and because many of said tracts of land so petitioned and applied for and attempted to be excluded by diminution of the limits of said village did not and do not contain five acres of land nor are or were the same used only for agricultural purposes, but were in truth and in fact, many of them less than five acres in area and used for ordinary village residence purposes, and for that some owners of some of said lands did not sign said application and that said proceeding was had without notice to this petitioner or its board of trustees or any of its officers or officials as to the presentation of said petition or of the consideration and action or either of the same to be by said court had in said proceeding, and said court is acting and has acted without power or jurisdiction in the premises and in excess of its lawful jurisdiction in the aforesaid particulars;

"Your petitioner further alleges that no appeal is authorized by law or permitted to this or any other court nor will any writ of error lie to such proceedings from this or any other court, although this court has by law superintending control of the judgments and orders of said county court and this petitioner is without remedy at law other than by the writ of *certiorari* herein prayed for;

"Your petitioner further shows and states that the appearance in the files and records with said county court of said purported petition, and application accompanying the same, to diminish the limits of your petitioner as an incorporated town or village, and the appearance upon the records of said county court of the aforesaid entry purporting to be an order or judgment of said county court diminishing the limits of your petitioner, is greatly harassing and hindering and will continue to harass and hinder and obstruct your petitioner in the performance of its public duties and in the collection of its lawful taxes and revenues assessed and to be assessed upon said lands;

"Your petitioner further states and shows that all the persons who did sign said petition and application in the aforesaid proceeding, and the persons who did file and present the same, well knew or ought to have known that many of said tracts of land, as aforesaid, do not contain five acres and were not used for agricultural purposes and that no notice had been given to this petitioner of the filing or of intention to present such petitioner and application, or of said proceeding in any manner had been given to your petitioner or any of its officers or officials and that the persons who did present said petition and application and did obtain the entry of said purported order and

judgment of said county court, well knew all the other facts aforesaid and in this petition set forth and presented and did so present said petition and application and did thereon so obtain said entry of a purported order and judgment so purporting to diminish the limits of your petitioner as a town or village fraudulently and with intent to injure your petitioner and to impose upon said County Court thereby wrongfully to obtain said purported order and judgment;

"Your petitioner further shows and states that M. S. Wallace and Axel Hawkinson are among and included in the persons who in truth and in fact signed petition and accompanying application of M. S. Wallace and others to diminish the limits of your petitioner and exclude said lands from its limits, and therefore your petitioner makes them also respondents herein as representing said petitioners and applicants as a class in order that they may have notice of this petition for writ of *certiorari* by your petitioner and for themselves and all other such petitioners and applicants may defend this instant petition for writ of *certiorari,* and your petitioner so does for the reason that the number of said petitioners and applicants in the county court are too numerous to bring before this court and may be properly represented by said Wallace and Hawkinson as a part of their number."

Section 8593, Revised Statutes 1919, provides that the "county court of each county shall have power . . . in its discretion on the application of any person or persons owning a tract of land containing five acres or more in such town or village, used only for agricultural purposes, to diminish the limits of such town or village by excluding any such tract of land for said corporate limits, *provided,* that such application shall be accompanied by a petition asking such change and signed by a majority of the taxpayers in such town or village."

A petition purporting to be signed by a majority of the taxpayers in the village or town of Grandview, asking that several different tracts of land owned by different persons, be excluded from the corporate limits of said village, was filed in the county court of Jackson county.

No notice of the filing of this petition or its presentation to the county court was given to the town of Grandview or to the taxpayers therein who did not sign the petition.

On presentation of this petition to the county court, said court by ordered entered of record excluded from the corporate limits of said village of Grandview the separate tracts of land described in the petition filed with said court. Afterwards, on the application of the village of Grandview, the circuit court of Jackson county issued its writ of· *certiorari* to respondents, returnable March 15, 1924, commanding them to bring before said circuit court all of the records and proceedings had in the county court pursuant to the filing of the tax-

payers' petition in said court. In obedience to the commands of the writ of *certiorari* respondents made return thereto. Thereafter, on the motion of respondents, the circuit court entered an order and judgment quashing the writ of *certiorari* theretofore issued, from which order the village of Grandview appealed to this court.

The first question presented by this appeal is whether or not the city was entitled to notice of the filing and presentation of the tax-payers' petition in the county court, asking that certain tracts of land be excluded from the corporate limits of said city.

Appellant contends that the city was entitled to such notice, while respondent contends the contrary and cites Section 8592, Revised Statutes 1919; In re City of Uniondale, 225 S. W. 985; In re The Town of Arcadia, 201 S. W. 539; Hall v. DeArmond, 46 Mo. App. 596.

The question presented In re City of Uniondale, supra, was whether or not persons residing in a territory sought to be incorporated were entitled to notice of proceedings had in the county court for the purpose of incorporating such territory into a town or city and whether or not such persons had a right to participate in said proceedings. The statute in that behalf provides that whenever a majority of the inhabitants of a given territory present a petition to the county court praying that they may be incorporated, if the court shall be satisfied that a majority of the taxable inhabitants have signed such a petition, the court shall declare such city or town incorporated. The Supreme Court held in this case that no notice of any kind was required; that the statute created the right, provided the remedy and prescribed the procedure and was complete within itself and it alone determined who should be parties to such proceedings, and for that reason the citizens and taxpayers who signed a remonstrance against the petition asking the incorporation did not thereby become parties and had no right to appeal.

Respondent contends that the statute under which the county court made the order excluding certain tracts of land from the corporate limits of the village of Grandview, is analogous to the statute considered in In re Uniondale, supra, and for this reason that case is authority for holding in the instant case that the village of Grandview was not entitled to any notice of the proceedings had in the county court which resulted in the exclusion of certain tracts of land from the corporate limits of said village, and had no right to appeal from the order and judgment of the county court in that proceeding. If respondent's contention in that regard be true, it would not necessarily follow that appellant is not entitled to relief by *certiorari* if the facts in the case warrant such a procedure.

The statute under which the proceedings were had in this case authorizing the county court to exclude the tract of land from the corporate limits of a town or village upon application of the owner

of such tract of land accompanied by a petition signed by a majority of the taxpayers therein. This statute does not require the giving of a notice to the town or village or to the taxpayers therein. For this reason respondent contends that the jurisdiction of the county court in this proceeding attached upon the filing of the petition purporting to contain all of the facts necessary to give the court jurisdiction, and jurisdiction having attached it was then the duty of the court to hear the cause and determine the existence or nonexistence of the jurisdictional facts alleged in the petition. It is also contended that the finding and judgment of the county court that it did have jurisdiction to hear and determine said cause is a final judgment and cannot be reviewed in this proceeding because *certiorari* does not lie to correct errors committed by the county court in the exercise of its rightful jurisdiction. In re City of Uniondale, 225 S. W. 985; State ex rel. v. Fleming, 158 Mo. 558, 59 S. W. 118; Snoddy v. Pettis County, 45 Mo. 363; Overton v. Johnson, 17 Mo. 450, are cited in support of this contention.

These cases do declare the law as contended for by respondents, and were correctly decided on the facts considered. There was no question of fraud in these cases. This being true, the jurisdiction attached in the county court upon the filing of a petition which recited the existence of facts necessary to give the court jurisdiction, and jurisdiction having thus attached the court was authorized to proceed with the case and in such proceedings determine whether or not the facts giving it jurisdiction, existed as alleged in the petition. As the statute gives the county court exclusive jurisdiction to determine these matters, its finding in that regard cannot be inquired into in the absence of illegality in the proceedings or fraud in the procurement of the judgment. In the case of State ex rel. v. Fleming, supra, the Supreme Court of this State had before it a question similar to the one here considered, and in disposing of the contention there made said:

"The jurisdiction of the county court in this matter attached by the filing of the petition, signed by what purported to be a majority of the inhabitants of the district sought to be incorporated, and no mere error or judgment on the part of that body in the matter of computing the fact as to the real number of the inhabitants of the incorporated district, or error of judgment on its part as to the question of law as to who of the designated community are to be reckoned and counted as 'taxable inhabitants,' can be inquired into by this or any other court, to arrest or disturb the force of the finding and judgment, or to correct a possible error of fact or law, that court might have made in the course of its inquiry, *unless illegality in the proceedings or fraud in the procurement of the order was practiced,*

*which at the time could not reasonably have been foreseen and averted."* (Italics ours.)

We think the case of State ex rel. v. Fleming, *supra,* clearly holds that if there was illegality or fraud in the procurement of the judgment in the county court, such matters can be inquired into in a proper proceeding by parties entitled to make such inquiry.

This being true, the next question is whether or not there was any illegality or fraud in the procurement of the judgment in the county court. Relator's petition for the writ of *certiorari* alleges among other things, that the petition filed in the county court asking for the exclusion of certain territory from the corporate limits of appellant, village, was not signed by a majority of the taxpayers of the village and that a large number of the names signed to said petition was in fact written thereon by other persons without authority from the person who purported to sign said petition; that the tracts of land sought to be excluded from the village limits were not tracts containing more than five acres and were not used for agricultural purposes only; that no notice was given to said village or its officers, of the filing of said petition and application nor of an intention to present the same to the county court; that the petition filed in the county court asking that the corporate limits of said village be diminished was accompanied by an application purporting to be signed by owners of tracts of land sought to be excluded; that some of said names were not the names of the persons who owned the respective lots of which they were designated as the owner; that the application accompanying the petition for diminution was not signed by some of the owners of the land excluded; that the persons actually signing the petition and application for diminution of the corporate limits of said village, well knew or ought to have known that many of the tracts sought to be excluded did not contain five acres and were not used for agricultural purposes but no notice was given to said village or any of its officers of the filing or intention to present said petition and application for diminution of the corporate limits of said village to the county court and that the persons who presented such petition and application to the county court, so knowing such facts did so fraudulently act with intent to injure the appellant and to impose upon the county court thereby and to wrongfully obtain such order or judgment.

If the facts alleged in relator's petition were true, the county court had no jurisdiction. When the case was heard in the circuit court, respondent filed a motion asking that the writ of *certiorari* theretofore issued be quashed for the reasons stated in said motion. This motion reads:

"Now come the respondents and move the court to quash the writ of *certiorari* issued herein for the reason that on the face of relator's

petition for writ of *certiorari* it appears that this court is without jurisdiction to entertain said petition or to issue said writ of *certiorari* as prayed for in relator's petition, and for the further reason that the facts stated in said petition show upon their face that the relators are not entitled to the relief prayed for.''

The motion was, in effect, a demurrer to appellant's petition, and for the purposes of said demurrer confessed as true all facts well pleaded in the petition.

We must presume right action on the part of the county court, and in so doing we must presume in the absence of a contrary showing, that the petition and application for diminution of the limits of appellant, village, recited all necessary jurisdictional facts and that the court so found on representations to it at the time the order in question was made.

The effect of appellant's petition for *certiorari* is that the jurisdictional facts alleged in the application and petition filed in the county court were not true; that the persons presenting said application and petition knew or ought to have known that such alleged facts were not true, but presented said application and petition to the county court, and obtained the order of said court diminishing the limits of said village fraudulently and with the intent to injure appellant and to impose upon said county court and thereby wrongfully obtain said order and judgment.

If the judgment of the county court was obtained in the manner indicated in appellant's petition for *certiorari*, there was fraud practised in the procurement of said judgment. We are not saying that the judgment was procured in that manner, but respondents, by their motion to quash, admit that it was so procured, and we must take the record as we find it and hold that there was fraud in the very procurement of the judgment.

From what is above said we must hold, that on the record as here presented, there was fraud practised in the procurement of the judgment in the county court and for that reason said judgment and a manner in which it was acquired can be inquired into in a proper proceeding brought for that purpose.

It is, however, contended by respondents that the order of the county court was made in its administrative capacity, and for that reason no right of review exists. In re Town of Arcadia, 201 S. W. 359; Hall v. DeArmond, 46 Mo. App. 656; St. L. R. R. v. City of St. Louis, 92 Mo. 165; Scott Co. v. Leftwich, 145 Mo. 26; St. Louis County v. Sparks, 11 Mo. 201; State v. Fleming, supra, are cited by respondents in support of this contention. These cases do lend color to respondents' contention. However, the Supreme Court in a later case, In re City of Uniondale, 225 S. W. 985, 986, holds the contrary view. It is there held that a judgment of the character here con-

sidered is a final judgment and may be appealed from by any person aggrieved by its rendition.

Having determined that the judgment of the county court diminishing the limits of appellant, village, is a final judgment, and therefore reviewable and having further determined that the record as here presented shows that such judgment was procured by fraud, this brings us to the final question as to whether or not appellant was sufficiently interested in the proceedings resulting in said judgment, as to entitle it to have said judgment review by *certiorari*.

It is contended that under the authority of In re City of Uniondale, 225 S. W. 985, 986, appellant has no right to maintain this action. The Uniondale case was an appeal by taxpayers from an order of the county court of St. Louis county incorporating a city of the fourth class. The statute there considered authorized the county court to incorporate a city of the fourth class when requested so to do by a petition signed by a majority of the taxable inhabitants of said city. The statute did not require a notice of any kind to be given. The court held in that case that the proceedings necessary to incorporate the town was purely statutory; that the statute created the right, provided the remedy and prescribed the procedure; that the statute alone determined who might be parties to such proceeding. Contention was there made that taxpayers should be accorded the right to be heard in such a procedure, because, if the territory was incorporated, the taxpayers residing therein would be subjected to the burden of the municipal taxation. The court held that the giving or withholding of such a right was within the discretion of the Legislature, and as the Legislature had not given taxpayers such right, it was not necessary that all taxpayers who might be affected by the order of the court, be made parties to such proceeding.

It was held in this case that if the petitioners had been aggrieved they would have been entitled to an appeal to the circuit court. The situation is different in the case at bar. The village of Grandview was already a corporate entity lawfully created. The lands in question were already included within its corporate limits. It does not seem reasonable that a corporation created by lawful authority, should be dismembered without notice or hearing. While the statute does not expressly provide that a city shall be made a party to a proceeding to exclude territory, or that it shall be notified of such proceedings, yet we think the giving of such a notice is implied and that a city lawfully incorporated, is entitled to notice of proceedings to exclude territory from its limits, and would be aggrieved by such an order made without notice.

*Certiorari* affords a remedy to anyone aggrieved by a final order of an inferior court or tribunal where no appeal or writ of error or other available mode of review is afforded,

The judgment is reversed and cause remanded. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.